UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ADAN RIVERA,

                      Plaintiff,       CIVIL ACTION

                                      No. 3:14-CV-00667-JWD-EWD

VERSUS

MARTIN J. DONNELLY ANTIQUE TOOLS,

                      Defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE FOR FAILURE TO COMPLY WITH THE COURT'S DISCOVERY ORDERS

**I.**      **INTRODUCTION**

Before the Court is the Motion to Dismiss with Prejudice for Failure to Comply with the Court's Discovery Orders ("MTD"), (Doc. 28), filed by Martin J. Donnelly Antique Tools ("Martin Donnelly, "MJD," or "Defendant").[1] In opposition, Mr. Adan Rivera ("Adan Rivera," "Rivera," or "Plaintiff") has submitted the Memorandum in Opposition to Motion to Dismiss ("Opposition"), (Doc. 30). To the Opposition, the Defendant has responded with the Reply Memorandum in Opposition to Motion to Dismiss ("Reply"), (Doc. 35). The bases for dismissal

---

[1] While MJD is the lone named defendant, other parties have been referenced during this litigation. (*See* Doc. 38-2 at 1.)

advocated in the MTD can be succinctly summarized: the Plaintiff's purported failures[2] to fulfill his mandatory discovery obligations under the Federal Rules of Civil Procedure,[3] whose Fifth Title specifies both a party's duties and a court's punitive powers. With the Defendant having chosen to so focus this first of two dispositive motions, the immediate dispute between the Defendant and Plaintiff (collectively, "Parties") requires resolution of one legal question: whether such misconduct, if indeed true, provides sufficient and compelling justification for the dismissal of an otherwise valid pleading.

In some ways, the controlling law is clear. Based on this case's public docket and the Parties' most recent briefings, the Plaintiff has run afoul of the Rules' technical, yet binding mandates, and even Plaintiff concedes that he may have committed at least one "unintentional mistake," (Doc. 30 at 2). In such situations, a complaint's dismissal is a permissible penalty, one often assessed pursuant to Rule 37(b)(2)(A)(v) when a party's obstreperousness has been extensive and conclusively shown. Even so, however, this particular sanction is one of the Rules' most excessive and potent. Therefore, it is not a favored remedy in those mundane cases in which no more than carelessness can be definitely proved. Here, no more than a lawyer's carelessness can be ascertained. Furthermore, when one party's noncompliance has not decisively impaired another's ability to mount a defense or file a cogent and effective dispositive motion under Rule 56, the law's preference for adjudication on the merits counsels against dismissal. In this proceeding, as its recent filing of the Motion for Summary Judgment ("MSJ"),

---

[2] Technically, these failures are the lawyer's, not the party's. Nonetheless, for purposes of the Federal Rules of Civil Procedure, the former is the latter's agent, and the former's mistakes are hence charged against the latter. In addition, as Federal Rule of Civil Procedure 1 now makes clear, both lawyers and parties are bound by this compendium.

[3] In this order, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

(Doc. 38), shows, the Defendant has surmounted the difficulties, if any, engendered by the Plaintiff's apparent noncompliance with the Rules' plain terms.

For these reasons, as initially stated on the record at the conclusion of the oral argument held on April 7, 2016, and as more fully explained below, this Court **DENIES IN PART** Defendant's Motion to Dismiss with Prejudice for Failure to Comply with the Court's Discovery Orders. Dismissal will not now follow. However, other appropriate sanctions must be—and will therefore be—assessed, as the Rules may not be flouted, regardless of the alleged cause.

## II.   BACKGROUND

### A.   Factual and Procedural History Prior to December 7, 2015

On October 22, 2014, the Plaintiff filed this case's first pleading ("Complaint"). (Doc. 1.) Several months later, on March 17, 2015, he tendered the First Amended Complaint ("Amended Complaint"). (Doc. 10.) According to these pleadings, in early 2013, the Defendant, a corporation domiciled in the State of New York but operating nationwide, contacted Plaintiff, a citizen of the State of Louisiana and a resident of Baton Rouge, about the possibility of auctioning his various antiques and tools ("Adan Rivera Collection" or "Collection").[4] (Doc. 1 ¶¶ 1–3; Doc. 10 ¶¶ 1–3; *cf.* Doc. 14 ¶ I.) The Parties eventually signed a contract on February 1, 2013. (Doc. 1 ¶¶ 1, 6; Doc. 10 ¶¶ 1, 6; *see also, e.g.*, Doc. 14 at ¶ I, V–VI; Doc. 17 ¶ B.)

This case springs from this contract. Simply stated, the Plaintiff alleges that the contract was breached and that further makes two interrelated claims of fraudulent inducement and negligent misrepresentation. (Doc. 1 ¶¶ 1, 6; Doc. 10 ¶¶ 1, 6; *see also* Doc. 17 ¶ B.) Specifically,

---

[4] Conversely, the Defendant maintains that Plaintiff, not MJD, initiated these discussions. (Doc. 14 ¶ I.)

the Plaintiff accuses the Defendant of four allegedly actionable legal wrongs: (1) "[t]he Defendant failed to advertise the items delivered to Defendant by the Plaintiff" in the manner specified in the Parties' contract; (2) "[t]he Defendant failed to hold auctions on behalf of Adan Rivera in Indianapolis, Indiana, Nashua, New York, and Aucoa, New York," three locations "agreed upon" by the Parties; (3) "[t]he Defendant has failed to fully pay for all items sold to . . . Rivera," the contract requiring such payment within thirty days of the relevant item's sale; and (4) as "Rivera relied on the representations and inducements of the Defendant in agreeing to the contract" that "all items would be sold, an inventory would be kept, payment would be made, and that Defendant had a good reputation in the business to carry out the sales," these three alleged contractual violations gave lie to the Defendant's promise, leaving the Defendant liable for fraudulent inducement and negligent misrepresentation. (Doc. 1 ¶¶ 7–23; Doc. 10 ¶¶ 7–33; *see also* Doc. 17 ¶ D.) Unlike the Plaintiff's first attempt, the Amended Complaint lists a number of supposedly missing or undersold items. (Doc. 10 ¶¶ 14–19.)

The Defendant answered on April 7, 2015, denying these allegations in whole or in part and raising several affirmative defenses. (Doc. 14 ¶¶ VII–X, XIII–XXXIV.) Above all, it insists that the contract remains "the best evidence of its terms and conditions and represents the entire agreement between the [P]arties." (Doc. 14 ¶¶ VII–X; *see also* Doc. 17 ¶ B.) Moreover, the Defendant "affirmatively avers that every item was sold, accounted for and that Plaintiff has received everything it is legally entitled to and that nothing is owed by Defendant." (Doc. 17 ¶¶ B, E.)

So as to solidify this argument and to uncover Plaintiff's evidentiary support, as Rule 26(b)(1) allows, the Defendant propounded discovery seeking specific information, beyond that provided in the Amended Complaint's fourteenth through nineteenth paragraphs, that would

allow it to "identify each and every item that Plaintiff contends was not sold or accounted for properly pursuant to the terms of the written contract." (*Id.* ¶ G.) On April 28, 2015, the Honorable Stephen C. Riedlinger ("MJ") entered a scheduling order, as required by Rule 16(b)(1). (Doc. 18.)

Discovery then commenced. The Defendant propounded its First Set of Requests for Admission, Interrogatories and Requests for Production of Documents on June 17, 2015. (Doc 19-1 at 1.) Unsatisfied by the Plaintiff's "untimely," "incomplete," and "insufficient" answers, (*Id.* at 2), Defendant filed a motion to compel and for sanctions on September 4, 2015. (Doc. 19.) On September 9, 2015, the MJ granted and denied in part this motion ("Ruling"). (Doc. 24.) In nine pages, this opinion highlights the insufficiency of certain (but not all of the) responses made by Plaintiff, the improper format and untimeliness of the Plaintiff's answer to at least one of Defendant's requests for admission, and Plaintiff's lack of any response to other requests for production, (*Id.* at 2, 5–8). The MJ reviewed these allegations, concluding that "[a]ll but two of the contested discovery responses were insufficient and/or unresponsive," and "[a] review of the [P]laintiff's discovery responses as a whole show that the [P]laintiff has made little to no attempt to properly satisfy his discovery obligations as required under the Federal Rules of Civil Procedure." (*Id.* at 8.) Having awarded $500 in fees, the MJ allowed Plaintiff fourteen days to supplement his deficient answers and produce the requested documents. (*Id.* at 9.) The Plaintiff did not choose to appeal this non-dispositive order, as permitted by statute, 28 U.S.C. § 636(b)(1), within the fourteen-day timeline set by rule, FED. R. CIV. 72.[5]

---

[5] This Court notes that this reference does not imply and should not be read to encourage appeals of every discovery order. In light of the enormous discretion afforded to magistrate judges by precedent and by law, appeals should be carefully considered, for the standard for reversal is not easily met. Otherwise, the entire purpose behind the magistrate judge system would be undercut, efficiency sacrificed.

On November 17, 2015, the Plaintiff asked the MJ for an extension of time to comply with this order. (Doc. 25.) The MJ granted this extension in part on that same day. (Doc. 27.) The new deadline for compliance was set as December 7, 2015. (Doc. 27.) In addition, this order made a specific finding: "Having reviewed the [P]arties['] submissions, the court agrees that the information the [R]uling requires the [P]laintiff to produce is information he should already have and should have already produced." (*Id.* at 1–2.)

### B.     Parties' Arguments

#### *1.     Defendant's Position*

On December 10, 2015, the Plaintiff supplied the supplemental responses and documents ("Supplemental Response") required by the Ruling. (Doc. 28-1 at 2.) According to the Defendant, this package was not only "untimely" but was also "not in conformity with Rule 33 . . . and lacked material information sought in . . . discovery." (*Id.* at 2.) More particularly, Defendant alleges three general failings by Plaintiff in the Supplemental Responses.

Initially, the Defendant pinpoints three procedural deficiencies. First, although the attached Certificate of Service, signed under oath, claims service occurred on "this 9th day of November, 2015," this statement presents two immediate problems. (*Id.* at 3.) First, the postage was purchased on December 8, 2015, and the order adjusting the deadline to respond was only issued on November 17, 2015. (*Id.*; *see also* Doc. 27.) Thus, the certificate is "clearly inaccurate and an impossibility," either "false or in error." (Doc. 28-1 at 3.) Second, the supplemental responses and production were mailed no earlier than December 8, 2015. (*Id.*) However, the deadline expressly set by the MJ was December 7, 2015. (Doc. 27.) As such, by definition, "service itself was late and not in compliance with the Court's November 17, 2015 ruling." (Doc.

28-1 at 3.) Lastly, the Supplemental Response was not signed by the Plaintiff under oath. (*Id.*) Again, pursuant to Rule 33(b)(5), "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." FED. R. CIV. P. 33(b)(5). Indeed, the MJ specifically directed the Plaintiff's attention to this clear requirement. (Doc. 24 at 9.) By Defendant's reckoning, this deficiency was the "most important[]," as Plaintiff both ran afoul of a rule and defied the MJ's explicit directions. (Doc. 28-1 at 3–4.)

Thereafter, the Defendant delves into the actual content of the Plaintiff's Supplemental Responses, first focusing on Plaintiff's amended answer to Interrogatory Number Five. (*Id.* at 5.) Interrogatory Number Five asked Plaintiff "to set forth specifically the amount by item that you contend supports . . . [the] allegation" that Defendant "failed to fully pay for all items sold," as alleged in Paragraph Number Nine of the Amended Complaint. (*Id.*; *see also, e.g.*, Doc. 10 ¶ 9; Doc. 1 ¶ 9; Doc. 19-1 at 9.) The Plaintiff's original answer read as follows: "Didn't sell for full price & the phonographics [sic] were <u>undersold</u> there are boxes of records not account for. (box 69 & 70)." (Doc. 28-1 at 5; *see also, e.g.*, Doc. 19-1 at 9; Doc. 24 at 6.) The MJ described this answer as "almost incomprehensible," as the Plaintiff had "failed to clearly state which items were '<u>undersold</u>' and provide information which would allow the [D]efendant to determine how much is allegedly owed per item." (Doc. 24 at 6; *see also* Doc. 28-1 at 6 (quoting Doc. 24 at 6).)

In the Supplemental Response, the Plaintiff attached Exhibit A, "a listing of all items unaccounted for in the auction," but rather than providing a precise price per item, it gives no more than "[t]he total value of the Adan Rivera collection," pegged as $100,000 and described as "the minimum value for the entire collection" upon which the Parties concurred. (Doc. 28-1 at 6.) Having quoted this rejoinder, the Defendant argues that it is inconsistent with the MJ's order for one reason: while he was "required to identify the value of each item in constructing . . . [his]

damages claim," this response does no such thing. (*Id.*) This response thereby prevents the Defendant from "determin[ing] how much is alleged owed per item" based on some credible "type of accounting for these alleged damages," though the MJ required no less on September 9, 2015, and again on November 17, 2015. (*Id.*; *see also, e.g.*, Doc. 24 at 6; *cf.* Doc. 27 at 2.)

The Defendant then dissects a second amended answer. In its seventh interrogatory, the Defendant asked the Plaintiff to "[s]et forth in detail the total amount of money you contend is owed and set forth exactly how that number was arrived at." (Doc. 28-1 at 7; *see also* Doc. 19-1 at 11.) Though the Defendant sought a "detailed calculation of the money allegedly owed," (Doc. 24 at 7), the Plaintiff answered as follows: "In excess of $100,000." (Doc. 28-1 at 7.) In explaining this chosen phrase to the MJ, Plaintiff apparently stated that the exact amount would be provided after he hired an expert. (Doc. 24 at 7; *see also* Doc. 28-1 at 7 (quoting Doc. 24 at 7).) Unpersuaded, the MJ founds this response "insufficient," as "[a]t this stage in litigation, more than one year from the time the action was filed and long after the close of the fact discovery, the [P]laintiff should have sufficient factual information to answer the Interrogatory – with or without the assistance of an expert." (Doc. 24 at 7.) Indeed, per his scheduling order, (Doc. 18), the MJ observed that "by now the [P]laintiff should have already retained and identified his expert." (Doc. 24 at 7.)

The Plaintiff's second attempt mirrored his answer to Interrogatory Number Five: "Adan Rivera and Martin Donnelly agreed that [the] Adan Rivera Collection was worth $100,000 at the time the items were given to Martin Donnelly to send to auction," a process seemingly achieved "through the guarantee of minimum prices for items sold" and verified by a "previously submitted exhibit B." (Doc. 28-1 at 7.) Defendant contends that this new response, like its predecessor, is "still insufficient," as it provides no "exact amount," evidences "no effort to show

the methodology that supports this calculation," and refers to an exhibit which apparently "does not comport with the Supplemental Response itself." (Doc. 28-1 at 8.) As for the exhibit itself, Defendant questions the numbers assigned by Plaintiff and "disputes that the prices listed . . . were guaranteed in any way." (*Id.*) Its reason is a logical one, for it promised to hold no more than "an auction," by definition an "unconditional" promise. (*Id.*)

Finally, the Defendant deals with the Plaintiff's vague attack on its third Request for Admission. (*Id.*) This request reads: "In paragraph 10 of your First Amended Complaint[,] you allege that the representations and inducements made by the [D]efendants specifically were 'th[at] all items would be sold,. . . inventory would be kept, payment would be made, and that [D]efendant had a good reputation in the business to carry out the sales.' Admit that there are no other representations or inducements than those set forth in . . . [this] paragraph." (*Id.* at 9; *see also, e.g.*, Doc. 10 ¶ 10; Doc. 1 ¶ 10; Doc. 19-1 at 3.) As the MJ observed on September 9, 2015, the Plaintiff failed to answer within the thirty-day window allotted by Rule 36(a)(3). (Doc. 24 at 2.) Thus, as the Plaintiff never filed a motion for an extension of time or to withdraw the admission, it must be now deemed admitted by default. (*Id.* at 2–3.) Accordingly, "any argument that there was an obligation to sell the items for a price certain or a price minimum has been deemed abandoned by the deemed admission to Request for Admission Number 3." (Doc. 28-1 at 9.)

Considered in sum, with these most recent "grossly deficient responses, the Plaintiff has demonstrated a complete disregard for his discovery obligations." (*Id.* at 11.) His "unsigned, untimely, and indifferently drafted responses" are indicative of the Plaintiff's "fragrant disregard for the discovery process and its associated obligations." (*Id.* at 11–12.) Besides, his "blatant failure to comply with the Court's Order [ of September 9, 2015] reveals his contempt for this

Court." (*Id.* at 12.) Accordingly, this Court should impose the harshest sanction available under Rule 37—the whole dismissal of this "frivolous litigation"—and award the Defendant with reasonable attorneys' fees and costs. (*Id.* at 10, 12.) The Reply returns to these contentions, again concluding: "The Plaintiff's failures, explanations, and non-explanations are clear and unequivocal," and, "The Plaintiff has not cooperated in good faith with discovery and this Court's orders." (Doc. 35 at 5.)

2.   *Plaintiff's Position*

In the five-page Opposition, the Plaintiff articulates five linked counterpoints. (Doc. 30.) First, he states that he did provide a signed oath with the Supplemental Responses. (*Id.* at 1.) Even if Defendant's counsel had not received it, the proper response would have been "a simple phone call." (*Id.* at 1–2.) As such, the allegedly missing oath was "not an egregious or flagrant violation of the court's order." (*Id.*) Second, the date of November 9, 2015, on the Certificate of Service was "inadvertent and not intentional," an "unintentional mistake which does not affect the material facts of the case" and that could have been corrected with another phone call. (*Id.* at 2.) Third, the Plaintiff did drop off the Supplemental Responses at the post office on December 7, 2015; for unknown reasons, the machine there did not "correctly" date the package. (*Id.* at 2–3.) Regardless, a package being one day late is not, like the missing oath or the incorrectly dated certificate, "a flagrant and blatant disregard for the obligations [of] undersigned counsel." (*Id.*) Fourth, his response to Interrogatory Number Seven was sufficient, as he first provided a list of items and, though he did not attach a precise dollar value to each, then specified a sum—$100,000—for the whole collection. (*Id.* at 3.) Fifth, the Plaintiff claims that he has provided information to the Defendant "about the alleged agreement the [P]arties had to sell the items at a

minimum price." (*Id.* at 4.) For evidentiary support, he cites to the eleventh paragraph of the Amended Complaint and his last response.[6] (*Id.*)

## III. DISCUSSION

### A. Legal Standard

Delineating the federal courts' "pre-trial deposition-discovery mechanism," Rules 26 through 37 specify the obligations of parties and lawyers alike during this frequently contentious stage of modern litigation. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 388, 91 L. Ed. 451 (1947). Crucially, as a matter of well-settled precedent, the courts' construction of these varied precepts is guided by Rule 1 and a general distaste for limiting proper discovery but for the reasons specified in Rule 26(b)(1) and (b)(2)(C). *The Scotch Whisky Ass'n v. U.S. Distilled Prods. Co.*, 952 F.2d 1317, 1319 (Fed. Cir. 1991) ("Rule 1 sets the policy for construing all of these rules."); *United States v. Hoffa*, 497 F.2d 294, 296 (7th Cir. 1974) ("All of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 54(d) relating to costs, must be interpreted in light of Fed. R. Civ. P. 1."); *see* Amir Shachmurove, *Disruptions' Function: A Defense of (Some) Form Objections under the Newly Amended Federal Rules of Civil Procedure*, 12 SETON HALL CIR. REV. (forthcoming Spring 2016) (summarizing the relevant case law). Like other federal procedural provisions adopted pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, the Rules have "the force and effect" of federal statutory law. *Police & Fire Ret. Sys. of City of Detroit v. Indymac MBS, Inc.*, 721 F.3d 95, 107 n.13 (2d Cir. 2013) ("The Federal Rules of Civil Procedure . . . have the force and effect of a federal statute." (internal quotation marks omitted)); *Morel v.*

---

[6] Confusing matters, Plaintiff cites the wrong documents. Document 13 is not the Amended Complaint, which is Document Number 14, and his response is not Document Number 14, which is the Defendant's answer. In other words, his drafting remains sloppy.

*Daimler-Chrysler AG*, 565 F.3d 20, 24 (1st Cir. 2009) ("[A]s long as a [federal] rule is consonant with both the Constitution and the Rules Enabling Act . . . that rule must be given effect regardless of contrary state law.").

So as to ensure compliance with these Rules' commands, Rule 37 provides "generally for sanctions against parties or persons unjustifiably resisting discovery." FED. R. CIV. P. 37 advisory committee's note to 1970 amend.; *see also, e.g.*, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S. Ct. 2455, 2462, 65 L. Ed. 2d 488 (1980). Pursuant to Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B); *Hill v. Emory Univ.*, 346 F. App'x 390, 392 (11th Cir. 2009). Justification for such a motion arises whenever "a deponent fails to answer a question asked under Rule 30," "a corporation fails to make a designation under Rule 30(b)(6) or 31(a)(4)," "a party fails to answer an interrogatory submitted under Rule 33," or "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(i)–(iv); *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698 (S.D. Ga. 2012) (quoting Rule 37(a)(3)(B)(iv)); *Huthnance v. District of Columbia*, 268 F.R.D. 120, 121 (D.D.C. 2010) (quoting Rule 37(a)(3)(B)). Another subparagraph, Rule 37(c) is directed at failures to disclose, supplement, or admit. FED. R. CIV. P. 37(c). "[O]n motion and after giving an opportunity to be heard," a court may "order payment of the reasonable expenses . . . caused by the failure," "inform the jury of the party's failure," and "impose other appropriate sanctions" specified in Rule 37(b)(2)(A). FED. R. CIV. P. 37(c)(1); *Asher v. Colgate-Palmolive Co.*, 278 F.R.D. 608, 611 (D. Colo. 2011). Additionally, a failure to admit as required by Rule 36 may also lead, upon the requesting party's movement, to responsibility for the propounding party's "reasonable expenses, including attorney's fees." FED. R. CIV. P. 37(c)(2); *Kelly v. McGraw-Hill*

*Cos., Inc.*, 279 F.R.D. 470, 472 (N.D. Ill. 2012). Rule 37(d)(1), in turn, authorizes a court to order sanctions "on motion" if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written responses." FED. R. CIV. P. 37(d)(1)(A); *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 124 (1st Cir. 2012). Meanwhile, Rule 37(d)(1)(A)(ii) allows for sanctions for "fail[ing] to serve . . . answers, objections, or written response[s]" to another's request for production under Rule 34. FED. R. CIV. P. 37(d)(1)(A)(ii).

The sanctions allowable for these sundry violations appear in Rule 37(b)(2)(A). FED. R. CIV. P. 37(b)(2)(A). A court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FED. R. CIV. P. 37(b)(2)(A)(i). Or it may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(ii). Or, if it prefers, it may "strik[e] pleadings in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(iii). Relevant here, a court can always "dismiss[] . . . [an] action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(v).

**B.     Application**

Based on the Plaintiff's conduct, *see supra* Part II, most especially on the Ruling, (Doc. 24), this Court is left with the unmistakable conclusion that the Plaintiff has flouted his duties under the Rules. Again and again, he has defied a deadline—and given an excuse backed by no more than his assertion. Again and again, he has provided answers to legitimate requests for production and interrogatories that are simply not specific enough to satisfy Rule 34(b) and Rule 33(b)(3), respectively, as the MJ has convincingly found and precisely documented. When

specificity and detail are demanded, as these Rules require and as the MJ has already ordered, generalities will not do. Yet, his Supplemental Response is filled with general and conclusory assertions, answers that leave neither this Court nor the Defendant with a well-defined understanding of the factual predicates for Plaintiff's claims.

That this particular defect is not unusual and that it was accompanied by a patently false, if innocently mistaken, oath and likely served late only underscores the cavalier regard with which the Plaintiff has treated the Rules' uncomplicated demands. Offered a second opportunity to give detail, Plaintiff repeated a number (but nothing more) and directed Defendant not to any evidence but to allegations made in his pleadings. Per the Rules and the Ruling, he needed to do far more, his failure, whether innocent or not, triggering Rule 37. *See* FED. R. CIV. P. 37 advisory committee's note to 1970 amend.; *see NHL v. Metro. Hockey Club*, 427 U.S. 639, 642–43, 96 S. Ct. 2778, 2780–81, 49 L. Ed. 2d 747 (1976). To conclude differently would be to defeat the very purpose of this particular provision: policing various motions and actions that stall a system of winnowing issues and uncovering facts intended to be relatively efficient, *cf.* FED. R. CIV. P. 16 advisory committee note to 1983 amend.; FED. R. CIV. P. 1. At its worst, Plaintiff's conduct readily falls within the category of misdeeds subject to such harsh punishment.

Nonetheless, Rule 37 was designed to maximize the judiciary's flexibility in managing the kind of carelessness and even disobedience displayed by the Plaintiff, ensuring that legitimate cases are not unnaturally terminated on the basis of technicalities and something less than deliberate intent. *See, e.g.*, *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 15 (1st Cir. 1983) (noting how the Rule does not require exhaustion of every sanction before dismissal or compel one sanction rather than another). True, "[w]hen a party has failed to comply with a court order compelling an answer to a particular interrogatory" or a request for production, as has happened

here, Rule 37(b)(2) "empowers a court to dismiss an action brought by the disobedient party." *Dunbar v United States*, 502 F.2d 506, 508 (5th Cir. 1974). However, Rule 37 requires a particular sanction be "just," FED. R. CIV. P. 37(b)(2)(A), and the strong public policy favoring adjudication of cases on their merits often leads courts to favor lesser punishments, *see, e.g.*, *Gates Rubber Co. v Bando Chem. Indus.*, 167 F.R.D. 90, 108 (D. Colo. 1996). Heeding this admonition, courts have been reluctant to order dismissal in the absence of clear and convincing evidence of willfulness, bad faith, or some fault of a party other than inability to comply and where no evidence has been destroyed or suppressed, leaving the opponent unable to mount a credible defense or offense. *See, e.g.*, *Computer Assocs. Int'l v. Am. Fundware, Inc.*, 133 F.R.D. 166, 169 (D. Colo. 1990); *Anderson v. Cryovac*, 862 F.2d 910, 925 (1st Cir. 1988); *CompNation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217-19 (1st Cir. 1982). Here, as Defendant's MSJ reveals, (Doc. 38), no such harm has followed, and the Plaintiff's conduct can be described as reckless or negligent just as surely as willful and in bad faith. Dismissal, then, seems too harsh a remedy for Plaintiff's particular misconduct, especially absent proof of more than his counsel's incompetence.

      Yet, at the same time, this Court is convinced that the Supplemental Response cohered neither with the Ruling nor with the Rules. With Rules 33 and 34 having been so obviously contravened, Rule 37 compels that his Supplemental Response be struck. Accordingly, because Plaintiff will now be deemed to have failed to answer the interrogatories posed or provide evidence to support his claims, it will be established as a matter of law that he lacks evidence with which to address Defendant's own assertions. In other words, he will be considered to have no evidence attesting to the exact value of the goods sold to the Defendant or to any other promises beyond those embodied in the Parties' plain contract. This sanction works best here for

it forecloses Plaintiff from relying on evidence that he has failed to provide despite Defendant's diligent attempts but does not prevent consideration of the MSJ that Defendant has filed. For that key motion's purposes, only timely created and extant record can and will be considered, and a definite judgment issued now that the record is closed due to Plaintiff's own undeniable misconduct, the difficult question of motive irrelevant

Additionally, due to his failure to comply in good faith with the Ruling and his legal obligations, Plaintiff will once again be ordered to pay a reasonable sum for Defendant's attorneys' fees, later to be determined by this Court. Such a result will too ensure that he and his counsel realize the full magnitude of their haphazard regard for the Rules' discovery requirements. Indeed, the MJ has already issued such an order, (Doc. 24); this Court will do so again, in a degree commiserate with Plaintiff's latest conduct.

## **IV.**    **CONCLUSION**

The Rules demand compliance with their every stricture, the discovery system formed so as to encourage a cooperative and productive exchange between naturally adverse persons. When these obligations are flouted, and when noncompliance reflects not a momentary stumble but a pattern, Rule 37 commands that sanctions be imposed. Although dismissal may be the most extreme, this Rule's ends can here be fulfilled by a lesser punishment. In particular, by striking the Plaintiff's Supplemental Response and by ordering the payment of attorneys' fees, his failure will be suitably addressed. Accordingly, it is HEREBY ORDERED that:

1. The Motion to Dismiss with Prejudice for Failure to Comply with the Court's Discovery Orders, (Doc. 28), is DENIED IN PART, and the Amended Complaint will not now be dismissed.

2. However, the Plaintiff's Supplemental Response is struck in full.

3. Within seven days of this order's docketing, the Defendant's counsel must provide this Court with a timesheet of the hours spent solely on the preparation of the Motion to Dismiss with Prejudice for Failure to Comply with the Court's Discovery Orders and the Reply Memorandum in Opposition to Motion to Dismiss. Soon thereafter, this Court will issue an order for payment of reasonable attorneys' fees based on this timesheet.

Signed in Baton Rouge, Louisiana, on <u>April 7, 2016</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**