UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ADAN RIVERA,

                Plaintiff,    CIVIL ACTION

                            No. 3:14-CV-00667-JWD-EWD

VERSUS

MARTIN J. DONNELLY ANTIQUE TOOLS,

                Defendant.

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I    INTRODUCTION**

Before the Court is the Motion for Summary Judgment ("MSJ"), (Doc. 38), filed by Martin J. Donnelly Antique Tools ("Martin Donnelly," "MSJ," or "Defendant"). Mr. Adan Rivera ("Adan Rivera," "Rivera," or "Plaintiff") has responded with the Memorandum in Opposition to Motion for Summary Judgment ("Opposition"), (Doc. 40). The Defendant has countered the Opposition with the Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), (Doc. 41). Building upon Defendant's Motion to Dismiss with Prejudice for Failure to Comply with Court's Discovery Orders ("MTD"), (Doc. 28), the MSJ is predicated on a single conclusion: in this breach of contract case, Defendant maintains that it has complied

with the relevant agreement's every provision, while Plaintiff has yet to provide evidence of any alleged breach or the two related torts—fraudulent inducement and negligent misrepresentation—alleged in his first pleading ("First Complaint"), (Doc. 1), and the First Amended Complaint ("Amended Complaint"), (Doc. 10). As the Plaintiff has assembled no evidence to support his case after discovery's conclusion, the Defendant contends that Federal Rule of Civil Procedure 56[1] mandates summary judgment in its favor.

Applying Rule 56's unambiguous standard, this Court agrees. To defeat the MSJ, the Plaintiff needed to offer some concrete evidence sufficient to address the defects and gaps peppering the existing record, not just conclusory allegations, unsubstantiated assertions, or an evidentiary scintilla. Otherwise, much of the evidence supporting the Defendant, the moving party here, would necessarily remain uncontradicted and unimpeached and thus decisive for purposes of Rule 56. Instead, however, the Plaintiff has offered citations to his pleadings and retorted with speculation and legalistic arguments; instead, he has conjured up nothing but some metaphysical doubt as to a handful of material facts. As written and as construed, Rule 56 compels a better showing from the non-movant for any case to survive its scrutiny. For these reasons, as stated on the record at the conclusion of the oral argument held on April 7, 2016, and as more fully explained below, **this Court GRANTS the Motion for Summary Judgment**.

---

[1] In this opinion, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

## II. BACKGROUND

### A. Factual and Procedural History[2]

On October 22, 2014, the Plaintiff filed the First Complaint. (Doc. 1.) Several months later, on March 17, 2015, he docketed the Amended Complaint. (Doc. 10.) According to these two pleadings, in early 2013, Defendant, a corporation domiciled in the State of New York but operating nationwide, contacted Plaintiff, a citizen of the State of Louisiana and a resident of Baton Rouge, about the possibility of auctioning his various antiques and tools ("Adan Rivera Collection" or "Collection").[3] (Doc. 1 ¶¶ 1–3; Doc. 10 ¶¶ 1–3; *cf.* Doc. 14 ¶ I.) The Defendant and the Plaintiff (collectively, "Parties") eventually signed a contract ("Contract" or "Consignment Agreement") on February 1, 2013. (Doc. 1 ¶¶ 1, 6; Doc. 10 ¶¶ 1, 6; *see also, e.g.*, Doc. 14 at ¶ I, V–VI; Doc. 17 ¶ B.)

This case springs from this agreement, with its alleged breach simultaneously constituting its own distinct cause of action and serving as proof of two interrelated claims of fraudulent inducement and negligent misrepresentation. (Doc. 1 ¶¶ 1, 6; Doc. 10 ¶¶ 1, 6; *see also* Doc. 17 ¶ B.) Specifically, the Plaintiff accuses Defendant of four allegedly actionable legal wrongs: (1) "[t]he Defendant failed to advertise the items delivered to Defendant by the Plaintiff" in the manner specified in the Parties' contract; (2) "[t]he Defendant failed to hold auctions on behalf of Adan Rivera in Indianapolis, Indiana, Nashua, New York, and Aucoa, New York," three locations "agreed upon" by the Parties; (3) "[t]he Defendant has failed to fully pay for all items sold to . . . Rivera," the contract having mandated such payment within thirty days of the relevant

---

[2] This section is mostly identical to Part II.A of the recently released Ruling on Defendant's Motion to Dismiss with Prejudice for Failure to Comply with Court's Discovery Orders.

[3] Conversely, the Defendant maintains that Plaintiff, not MJD, initiated these discussions. (Doc. 14 ¶ I.)

item's sale; and (4) as "Rivera relied on the representations and inducements of the Defendant in agreeing to the contract" that "all items would be sold, an inventory would be kept, payment would be made, and that Defendant had a good reputation in the business to carry out the sales." Doc. 1 ¶¶ 7–23; Doc. 10 ¶¶ 7–33; *see also* Doc. 17 ¶ D.) These three contractual violations allegedly gave lie to the Defendant's promise, leaving the Defendant liable for fraudulent inducement and negligent misrepresentation. (Doc. 1 ¶¶ 7–23; Doc. 10 ¶¶ 7–33; *see also* Doc. 17 ¶ D.) Unlike Plaintiff's first attempt, the Amended Complaint lists a number of supposedly missing or undersold items, thereby propounding a slightly more specific allegation. (Doc. 10 ¶¶ 14–19.) Not required at the time, no evidence to substantiate this allegation was then appended.

The Defendant answered on April 7, 2015. (Doc. 14.) Therein, the Defendant denies these allegations in whole or in part and raises several affirmative defense. (Doc. 14 ¶¶ VII–X, XIII–XXXIV.) Above all, it insists that the contract remains "the best evidence of its terms and conditions and represents the entire agreement between the [P]arties." (Doc. 14 ¶¶ VII–X; *see also* Doc. 17 ¶ B.) Moreover, the Defendant "affirmatively avers that every item was sold, accounted for and that Plaintiff has received everything he is legally entitled to and that nothing is owed by Defendant." (Doc. 17 ¶¶ B, E.) As it later made clear, the Contract laid forth the Parties' duties with great specificity, and the Defendant has much evidence to show that it complied with its minimal terms. (*See, e.g.*, Doc. 38.)

**B.** **Parties' Arguments**

*1.* *Defendant's Position*

First emphasizing one key fact—although the Plaintiff has now identified the items supposedly not auctioned off in a twenty-page handwritten list, (Doc. 38-8), he "still failed to

specify any dollar amount item by item to establish his proposed measure of damages"—and incorporating the points made in its "meritorious" MTD, the Defendant describes the MSJ's purpose as twofold:

> [T]o demonstrate to the Court that . . . [it] has fulfilled its obligations under the Consignment Agreement and that in fact each and every item that [P]laintiff has finally identified as 'not accounted for', was auctioned, accounted for and that the proceeds thereof have been transmitted to the [P]laintiff.

(Doc. 38-1 at 3.) The Defendant quotes the relevant portions of the Contract:

> Consigned items will be sold at public auction on behalf of Adan Rivera, (the consignor) by Live Free or Die Antique Tool Auctions at auction(s) to be held on the following date(s) at location(s):
>
> 2013 Auctions: Indianapolis, Nashua, NH, Avoca, NY.
>
> Commission on selling price of each item: 20%. Subject to the following additional terms, conditions and stipulations: "From the Adan Rivera Collection". Live Free or Die Antique Tool Auctions will advertise the auction(s) using direct mail, advertising in antique related publications and antique journals.
>
> Payment for items sold will be made to the consignor within thirty days of the end of the sale. Entered into this 1 Day of Feb., 2013.

(*Id.* at 5.) Adhering to this accord, the Plaintiff's "consigned articles were advertised in catalogues and sold at auctions during 2013 and 2014." (*Id.*) Moreover, "[t]hree weeks before each auction, MJD sent to [P]laintiff a paper list of his consignments along with a copy of the catalogue in which those items were listed; after each auction, it provided him with a Consignor Report. (*Id.* at 5–6.) The Defendant attaches as evidence examples of the advertisements used, the paper list of consignments sent, and an affidavit of Ms. Kathleen Donnelly ("Affidavit"), the employee at MJD who first dealt with Plaintiff in November of 2012. (*Id.*; *see also, e.g.*, Doc. 38-2 at 1; Doc. 38-4; Doc. 38-6; Doc. 38-7.) Upon receiving the Plaintiff's handwritten list, which "fails to fully conform with the Court's Order" of September 9, 2015," (Doc. 24), the Defendant did more: it prepared "a full and complete reconciliation," matching every one of the

Plaintiff's allegedly missing items to a specific entry in its own catalogues. (Doc. 38-1 at 6–7.) In sum, therefore, the existing evidence recounts a specific tale that undercuts the very foundations of the Plaintiff's case: the Plaintiff's items were advertised and sold, and Plaintiff was duly paid for every object that he surrendered. (*Id.* at 8.) As the Contract required no more, the Defendant has met its express obligations, the Plaintiff having failed to provide any contrary evidence. This fact and failing must be decisive here, the Defendant argues, as the Parties' contract was clear and unambiguous, and pursuant to controlling New York law, its plain meaning must control. (*Id.* at 12.)

Thereupon, the Defendant notes that the Plaintiff's other claims of fraudulent inducement and negligent misrepresentation have been mooted by his own inaction. As the Magistrate Judge ("MJ") recounted in an earlier ruling, (Doc. 24), the Defendant's Third Request for Admission reads: "In paragraph 10 of your First Amended Complaint[,] you allege that the representations and inducements made by the [D]efendants specifically were 'th[at] all items would be sold,. . . inventory would be kept, payment would be made, and that [D]efendant had a good reputation in the business to carry out the sales.' Admit that there are no other representations or inducements than those set forth in . . . [this] paragraph." (Doc. 28-1 at 9; *see also, e.g.*, Doc. 10 ¶ 10; Doc. 1 ¶ 10; Doc. 19-1 at 3.) For whatever reason, despite this question's simplicity, the Plaintiff failed to answer within the thirty-day window allotted by Rule 36(a)(3). (Doc. 24 at 2.) Thus, as the Plaintiff never filed a motion for an extension of time or to withdraw the admission, the MJ ruled that the admission must be now deemed admitted by default, (*Id.* at 2–3), and "any argument that there was an obligation to sell the items for a price certain or a price minimum has been deemed abandoned by the deemed admission to Request for Admission Number 3." (Doc. 28-1 at 9.) As a result of this failure, only the Plaintiff's breach of contract action has remained viable, with the

Defendant having provided more than sufficient evidence of its compliance with this agreement's written terms, *see supra*.

Actually, the Defendant goes farther. It emphasizes how the Affidavit "unequivocally states that there was absolutely no discussion about appraisals, reserve prices or minimum prices for which items must be sold." (*Id.* at 10.) If such material conditions had been agreed to, they would "surely have been included in the written contract," for they "are a significant departure from the usual and customary understanding of a 'public auction.'" (*Id.*) In addition, the Defendant claims that the Plaintiff "never once raised an objection to th[is] process though he had multiple opportunities to do so since his items were sold at eight different auctions." (*Id.* at 11.) Lastly, with discovery now at an end, Plaintiff has yet to itemize his damages. (*Id.* at 12.) The Defendant concludes that this failure must be fatal: If the Plaintiff "can offer no damages claim, then his case must be dismissed." (*Id.* at 13.)

### 2. *Plaintiff's Responses*

In the Opposition, the Plaintiff offers no new evidence and responds to the MSJ in two ways.

First, he attempts to address the evidentiary deficiencies identified by the Defendant by citing to the Amended Complaint's fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth paragraphs. (Doc. 40 at 2–3; *see also* Doc. 10 ¶¶ 14–19.) He also directs the Court to the handwritten inventory submitted during discovery and previously dissected by the Defendant in its MSJ, (Doc. 40 at 3; *see also* Doc. 38-1 at 6–8). Similarly, in denying that no minimum price for sales was ever given, Plaintiff cites to the Amended Complaint's "*allegation* of minimum price"; no actual evidence is thereupon cited. (*Id.* at 4–5 (emphasis added).) Again in

the same manner, the Plaintiff insists that a reserve price of $100,000 was agreed to by the Parties, this allegation allowing the Defendant "a clear understanding of the claim and value of the collection." (*Id.* at 5.) Having paid the Defendant some fraction, as the copies of checks attached to the MSJ show, Defendant is on notice of "how much remains in the relief claimed herein." (*Id.*) A dispute over the minimum amounts exists, though no evidence has yet been unearthed but Plaintiff's own unsubstantiated assertions. (*Id.*) For these reasons, he "has provided more than enough information and evidence to the [C]ourt and [D]efendant to show that much remains in dispute in this matter." (*Id.* at 6.)

Second, the Plaintiff launches two legal arguments. He maintains that "[t]he failure to advertise the items and attribute them to the Adan Rivera collection constituted a breach of contract and it remains in dispute as to how this affected the sales price of the items in the collection." (Doc. 40 at 4.) He attacks the Defendant for providing "only a few examples and a link to a website which did not show the listing for the entire Adan Rivera collection or how the items were advertised before being sold." (Doc. 40 at 4.) In addition, he insists that "the aforementioned auctions and lots have not all been accounted for in terms of matching the items with the advertising and auctions in which they were sold." (*Id.*) A genuine issue thus remains "as to whether [D]efendant complied with the [C]ontract in accounting for these items, advertising them properly, and auctioning them as agreed upon by the [P]arties." (*Id.*) These questions are described by the Plaintiff as "material facts in dispute in this case" which militate against the MSJ.

*3.     Defendant's Reply*

The Reply briefly echoes the MSJ's central points. Once more, it stresses that the Plaintiff has offered up "zero evidence." (Doc. 41 at 3.) More significantly, the Defendant damns the Plaintiff for doing "exactly what the law deems inadequate when he disingenuously equates unsupported allegations in his pleadings with actual evidence and relies on those allegations in an attempt to create an issue of fact." (*Id.*) In conclusion, argues the Defendant, the Plaintiff "offers no documents, no testimony, and no discovery responses" to lend some concrete support to a single claim.[4] (*Id.*)

### III.    DISCUSSION

**A.    Legal Standard**

Rule 56 encodes the standard applicable to the MSJ. Per Rule 56(a), summary judgment is generally appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.*, 587 F. App'x 182, 186 (5th Cir. 2014) (citing *Anderson*, 477 U.S. at 248). As the Court famously stated, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

[4] The Reply rehashes Defendant's argument as to the import of Plaintiff's failure to properly respond to its Third Request for Admission. (Doc. 41 at 4.)

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2551, 91 L. Ed. 2d 265 (1986),

Axiomatically, a court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Still, "[w]hen both parties have submitted evidence of contradictory facts," *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005), a court is bound to "draw all reasonable inferences in favor of the nonmoving party" and cannot "make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumping Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000); *see also Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinning of [factual disputes]"). This Court must thus "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (2d ed. 1995). In other words, although this Court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110, *cited in Havera*, 723 F.3d at 591.

From this precedent a general tenet has been mined. Within the narrow ambit of Rule 56, summary judgment is inappropriate (1) if there are legitimate, not superficial or frivolous, factual

disputes that may affect the outcome of the case under the applicable substantive law, *see Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510, and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "a scintilla of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). As such, if the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, summary judgment must be entered. *See Anderson*, 477 U.S. at 249.

**B.     Application**

By any fair measure, Plaintiff has failed to satisfy the burden imposed upon him by Rule 56. In the MSJ, the Defendant provided a copy of the Contract which both signed and evidence, from an affidavit to copies of consignment lists, advertisements, and more; in other words, the Defendant has supported its position by citations to evidence neither impeached nor controverted by an iota of other evidence. The contract plain, the evidence of the Defendant's fealty to this agreement's explicit mandates is substantial and overwhelming. And though the Court has struck the Plaintiff's supplemental response, (Doc. 44), Defendant has combed that document and linked each purportedly missing item to a good actually sold, (*See* Doc. 38-9). Viewed overall, the evidence gathered by the Defendant leads to an unmistakable conclusion: whatever misunderstandings were accidentally fomented, the Defendant breached no explicit duty stated in a binding and plain contract. As such, the record demonstrates an absence of genuine issue of material fact as to the Plaintiff's claims, for the Defendant has amply evidenced both the contract's contents and the sufficiency of its conduct.

Of course, had the Plaintiff provided some evidence to substantiate its allegations of missing items and a minimum price, of fraudulent inducement and negligent misrepresentation, this striking fact would not matter, for a court "must disregard all evidence favorable to the moving party that the jury is not required to believe" when weighing a motion for summary judgment, *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110, *cited in Havera*, 723 F.3d at 591. But this longstanding tenet first requires that "both parties . . . submit[] evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540. And, as allegations are by definition not evidence, the non-movant must first present more than "on the mere allegations in its pleadings," *T.W. Elec. Serv. v. Pac. Elec. Contractors Assocs.*, 809 F.2d 626, 630 (9th Cir. 1987). Indeed, Rule 56(e) precisely requires the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). Hence, conclusory, speculative testimony in affidavits and moving papers, "some metaphysical doubt as to the material facts," "conclusory allegations," unsubstantiated assertions," or "a scintilla of the evidence" cannot themselves raise genuine issues of fact and defeat summary judgment. *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998); *Little*, 37 F.3d at 1075.

Yet, as the Defendant correctly observes, (Doc. 41), the Plaintiff has done precisely this. In the Opposition—indeed, throughout this litigation, (*See, e.g.*, Doc. 24, 30)—he has relied on his own pleadings and his own unconfirmed allegations in attempting to counter the Defendant's every evidentiary conclusion and inference. No evidence beyond his own repeated statements supports the allegation that a minimum price was attached to his collection and that the Defendant promised more than what its evidence shows it to have undertaken, and his opposition is thus filled with nothing but the "unsubstantiated assertions" and "conclusory allegations" forbidden by Rule 56. *Little*, 37 F.3d at 1075; *see also, e.g.*, *Faustin v. City & Cnty. of Denver*,

423 F.3d 1192 (10th Cir. 2005). With discovery now completed, he has given neither this Court nor the Defendant anything more than handwritten sheets, persuasively contradicted, and his pleadings' averments, cited thrice. Indeed, in a most revealing omission, he had appended no affidavit to a single relevant motion. (*See, e.g.*, Docs. 30, 40.) Because Rule 56 compels a non-movant to do more so as to withstand a motion for summary judgment, *see, e.g.*, *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1134 (10th Cir. 1994), one result must now follow given the Plaintiff's failure to buttress a single point with evidence both credible and concrete: the MSJ must be granted.

## IV.     CONCLUSION

Undeniably, Rule 56 erects a high hurdle, for a court must always view the evidence and the inferences drawn from that evidence in the light most favorable to the non-moving party. Still, if the movant marshals evidence in its favor or pinpoints a fatal evidentiary omission in the non-movant's case, the latter must do more than invoke its pleadings and echo old claims. Rather, it must present specific facts showing a genuine issue remains to be decided; otherwise, its case will fall. Here, as the MSJ convincingly demonstrates, the Plaintiff has done far less, relying on a torrent of conclusory or unbacked assertions. As a matter of well-settled law, Rule 56 demands far more. Accordingly, for the foregoing reasons, **this Court GRANTS the Defendant's Motion for Summary Judgment**.

Signed in Baton Rouge, Louisiana, on <u>April 7, 2016</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**